# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# Civil Case No. 1:11cv7

| | |
|---|---|
| **RICHARD LEE COWAN, SR.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **MEMORANDUM** |
| ) | **AND ORDER** |
| **MICHAEL J. ASTRUE, Commissioner** ) | |
| **of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 10] and the Defendant's Motion for Summary Judgment. [Doc. 12].

## I.  PROCEDURAL HISTORY

The Plaintiff filed an application for Social Security Income and Disability Insurance Benefits on November 23, 2007 alleging that he became disabled as of July 14, 2007. [Transcript ("T.") 19]. The Plaintiff's applications were denied initially and on reconsideration. [T.77, 83]. A hearing was held before Administrative Law Judge ("ALJ") Todd D. Jacobson on July 29, 2009. [T.19]. On November 24, 2009, the ALJ issued decision, denying the Plaintiff benefits . [T. 31]. The Appeals Council denied the Plaintiff's request for review,

thereby making the ALJ's decision the final decision of the Commissioner. [T. 1]. The Plaintiff has exhausted his available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, see Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). The Fourth Circuit has defined "substantial evidence" as "more than a scintilla and [doing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401, 91 S.Ct. at 1427).

The Court may not re-weigh the evidence or substitute its own judgment

for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below.  Hays, 907 F.2d at 1456; Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

III.   **THE SEQUENTIAL EVALUATION PROCESS**

In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process.  20 C.F.R. §§ 404.1520, 416.920.  If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied.  Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

First, if the claimant is engaged in substantial gainful activity, the application is denied regardless of the medical condition, age, education, or work experience of the applicant.  20 C.F.R. §§ 404.1520, 416.920.  Second, the claimant must show a severe impairment.  If the claimant does not show any impairment or combination thereof which significantly limits the claimant's physical or mental ability to perform work activities, then no severe impairment is shown and the claimant is not disabled.  Id.  Third, if the impairment meets or equals one of the listed impairments of Appendix 1, Subpart P, Regulation 4, the claimant is disabled regardless of age, education or work experience.  Id.  Fourth, if the impairment does not meet the criteria above but is still a severe impairment, then the ALJ reviews the claimant's residual functional

3

capacity (RFC) and the physical and mental demands of work done in the past. If the claimant can still perform that work, then a finding of not disabled is mandated. Id. Fifth, if the claimant has a severe impairment but cannot perform past relevant work, then the ALJ will consider whether the applicant's RFC, age, education, and past work experience enable the performance of other work. If so, then the claimant is not disabled. Id.

## IV. THE ALJ'S DECISION

In his November 24, 2009, decision, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act at any time from July 14, 2007, through the date of the decision. [T. 31]. The ALJ made the following specific findings:

(1) The claimant meets the insured status requirements of the Social Security Act through September 30, 2012.

(2) The claimant has not engaged in substantial gainful activity since July 14, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*).

(3) The claimant has the following severe impairments: peripheral neuropathy, neuritis of the lower extremities, degenerative changes in the cervical spine, depressive disorder, and borderline intellectual functioning (20 CFR 404.1520(c)).

(4) The claimant does not have an impairment or combination of

4

impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

(5) The claimant had the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) except that he is limited to frequent handling and fingering bilaterally and requires a sit/stand option on an occasional basis. The claimant is further limited to only occasional climbing, balancing, stooping, kneeling, crouching and/or crawling and must avoid concentrated exposure to hazards such as moving machinery or unprotected heights. In addition, the claimant is limited to unskilled work.

(6) The claimant is unable to perform any past relevant work (20 CFR 404.1565).

(7) The claimant was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

(8) The claimant has limited education and is able to communicate in English (20 CFR 404.1564).

(9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job (See SSR 82-41 and 20 CFR Part 404, Subpart

P, Appendix 2).

(10) Considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

(11) The claimant has not been under a disability, as defined in the Social Security Act, from July 14, 2007 through the date of this decision (20 CFR 404.1520(g)). [T. 21-31].

## V.    DISCUSSION

Plaintiff points to a number of alleged errors by the ALJ that he contends require that the District Court remand this case for a new hearing. First, Plaintiff contends that the ALJ erred at step two by concluding that Plaintiff's carpal tunnel syndrome was not a severe impairment. Second, Plaintiff contends that the ALJ failed to properly weigh the medical opinion of Dr. Robert Ratcliffe, M.D. Fourth, Plaintiff contends that the ALJ failed to properly evaluate Plaintiff's residual functional capacity (RFC). Finally, Plaintiff contends that new evidence he submitted to the Appeals Counsel warrants remand. Rather than separately set forth the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

## A. Any Error by the ALJ in Failing to Find that Plaintiff's Carpal Tunnel Syndrome to be a Severe Impairment was Harmless

At step two of the five step evaluation process, the ALJ found that Plaintiff had the following severe impairments: peripheral neuropathy, neuritis of the lower extremities, degenerative changes in the cervical spine, depressive disorder, and borderline intellectual functioning. [T. 21]. The ALJ, however, did not mention Plaintiff's carpal tunnel syndrome in making his determination as to Plaintiff's severe impairments. [T. 21]. Plaintiff contends that the ALJ erred by not considering his bilateral carpal tunnel syndrome as an additional severe impairment. [Doc. 10 at 19].

The ALJ's determination as to whether an impairment is severe is a threshold determination. See 20 C.F.R. § 404.1520(c). An impairment is not severe "only if it is a *slight abnormality* which has such a *minimal* effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (internal citation and quotation omitted) (emphasis in original); see also Albright v. Comm'r of Soc. Sec. Admin., 174 F.3d 473, 474 n.1 (4th Cir. 1999); 20 C.F.R. § 404.1521(a) ("An impairment . . . is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). This is not a difficult standard for a claimant to satisfy. See Albright, 174 F.3d at 474 n.1; see also Stemple v.

7

Astrue, 475 F. Supp. 2d 527, 536-37 (D. Md. 2007) ("The severity standard is a slight one in this circuit . . . .").

The record in this case does not support a finding that Plaintiff's bilateral carpal tunnel syndrome had such a minimal effect on Plaintiff that it would not be expected to interfere with his ability to do basic work actives. See Evans, 734 F.2d at 1014-15; 20 C.F.R. § 404.1521(a). At the hearing, Plaintiff testified that he had carpal tunnel syndrome in both hands. [T. 45-47]. This is consistent with the medical records. [See e.g., T. 190-193]. Although Plaintiff had surgery on his left hand [T. 193], no surgery was ever performed to address the carpal tunnel syndrome in his right hand [T. 45]. Plaintiff, who is right handed, stated that his grip with his right hand was not good and that he could only grip tools for limited periods at a time. [T. 45-46]. The state agency reviewing physicians found that Plaintiff was limited in his handling and fingering. [T. 243, 274]. In fact, Dr. Lillian Horne, M.D. found that Plaintiff was limited to "frequent but not continuous handling and fingering due to CTS R hand." [T. 274]. Accordingly, the record demonstrates that Plaintiff's carpal tunnel syndrome in his right hand is more than a mere slight impairment and would significantly limit Plaintiff's ability to work. The ALJ, therefore, erred by failing to find that Plaintiff's carpal tunnel syndrome was a severe impairment at step two.

Provided that the claimant has at least one severe impairment, the ALJ must also consider the combined effect of all of the claimant's impairments, irrespective of whether they are severe, in determining the claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1545(e); Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989). The Fourth Circuit has never addressed whether the failure to classify an impairment as severe, in and of itself, warrants remand. Several courts have held that because the ALJ must consider both severe and non-severe impairments in determining a claimant's RFC, an ALJ's failure to characterize an impairment as severe does not require remand, provided the ALJ considers all of the claimant's impairments, including the non-severe impairments, at the later steps. See e.g., Pompa v. Comm'r of Soc. Sec., 73 F. App'x 801, 803 (6th Cir. 2003) (unpublished); Swanson v. Astrue, No. 2:10cv217, 2011 WL 2582617, at *8 (D. Vt. Jun. 29, 2011) (collecting cases). In short, the Court in Pompa held that the error at step two is harmless if the ALJ discusses all of the impairments and any limitations posed by them in his or her later analysis. 73 F. App'x at 803; see also Garrison v. Astrue, No. 2:10cv619, 2011 WL 1337257, at *10 (S.D. Ohio Mar. 1, 2011). Other courts, however, have remanded for failure to consider an impairment at step two of the analysis, finding that such a failure is clear error and flaws the remaining steps of the sequential analysis. See

e.g., Hair v. Astrue, No. 5:10cv309, 2011 WL 2681537, at *6-7 (E.D.N.C. Jun. 16, 2011) ("The impropriety of the ALJ's analysis of plaintiff's impairments at steps two and three necessarily invalidates the ALJ's RFC determination."); Hernandez v. Astrue, No. CA 09-428 ML, 2010 WL 4117186, at *8 (D.R.I. Sept. 28, 2010); Fraley v. Astrue, No. 5:07cv141, 2009 WL 577261 (N.D. W. Va. Mar. 5, 2009).

Based on the specific facts of this case, the Court must conclude that any error at step two by the ALJ in failing to find that Plaintiff's carpal tunnel syndrome was a severe impairment was harmless. The ALJ specifically discussed Plaintiff's carpal tunnel syndrome and the physical impairments he suffered as a result in assessing Plaintiff's RFC. [T. 24-29]. The ALJ noted that Plaintiff reported numbness in his left hand and that the grip in his right hand was diminished. [T. 25]. He discussed the medical evidence in the record as well as Plaintiff's statements concerning the intensity and limiting effects of his carpal tunnel syndrome [T. 25, 27-28].

The ALJ then considered the assessments of the state agency reviewing physicians who found that Plaintiff was limited in his handling and fingering as a result of the carpal tunnel syndrome in his right hand. [T. 243, 274]. The ALJ afforded great weight to their assessments and found that Plaintiff was limited to frequent handling and fingering bilaterally. [T. 24, 28].

10

Because the ALJ considered Plaintiff's carpal tunnel syndrome in his right hand in determining whether this impairment, either separately or in combination with his other impairments, rendered him unable to engage in substantial gainful activity, and even incorporated Plaintiff's physical limitations stemming from his carpal tunnel syndrome into Plaintiff's RFC, remand is not necessary in this case because any error at step two was harmless; remand would not lead to a different result. See Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."); Morris v. Bowen, 864 F.2d 333, 335 (5th Cir. 1988); see also Morgan v. Barnhart, 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished) (applying harmless error doctrine in context of Social Security case).

### B. The ALJ did not Err in Evaluating the Medical Opinions in the Record

In evaluating and weighing medical opinions, the ALJ considers: "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson, 434 F.3d at 653; see also 20 C.F.R. § 404.1527. The ALJ, however, will give a treating source's opinion

"controlling weight" where it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record . . . ." 20 C.F.R. § 404.1527(d)(2); Mastro, 270 F.3d at 178. As the Fourth Circuit explained in Mastro:

> Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590. Under such circumstances, the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence. See Hunter, 993 F.2d at 35.

Mastro, 270 F.3d at 178.

In addition, the ALJ must provide a good reason in the notice of the determination or decision for the weight he or she gives a claimant's treating source opinions. 20 C.F.R. § 404.1527(d)(2); SSR 96-2p, 1996 WL 374188 (Jul. 2, 1996). Social Security Ruling 96-2p further provides that:

> the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

Dr. Robert Ratcliffe was Plaintiff's treating psychiatrist. [T. 22]. The ALJ rejected Dr. Ratcliffe's opinion that Plaintiff's mental impairments met the listing criteria of sections 12.04 and 12.06 due to Plaintiff's functional limitations and repeated episodes of decompensation of extended duration.

12

[T. 22, 358-73]. Specifically, the ALJ found that the opinion of Dr. Ratcliffe as to the severity of Plaintiff's mental impairments was not supported by the medical records, including Dr. Ratcliffe's contemporaneous treatment notes. [T. 22]. Plaintiff contends that the ALJ erred by failing to give controlling weight to the medical opinion of Dr. Ratcliffe.

As an initial matter, statements by medical sources that a patient is disabled, unable to work, or meets the listing requirements are not medical issues, but are administrative findings reserved for the Commissioner. SSR 96-5p, 1996 WL 374183 (Jul. 2, 1996). Because they are administrative findings, "treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance." Id. Accordingly, disregarding any such statements by Dr. Ratcliffe was proper.

In addition, the ALJ's determination not to give controlling weight to Dr. Ratcliffe's opinion as to the functional limitations Plaintiff suffered as a result of his mental impairments was supported by substantial evidence in the record. First, although Dr. Ratcliffe and Dr. Denton both opined that the limitations shown in the Psychiatric Review Technique form were present since July 2007 [T. 272-73], the medical records do not support such an opinion.

13

Prior to the death of Plaintiff's son in July of 2008, the medical records reflect that Plaintiff indicated that his depression was improving and he denied having any notions of suicide. [T. 339, 317-19]. Plaintiff was pleasant, alert, attentive, cooperative, and cheerful. [T. 317-19]. His speech was normal, his memory was intact, his thought process was logical and concrete, and his judgment and insight were good. [(T. 317-19].

These findings were also consistent with the Psychiatric Review Technique of Dr. Sharon Skoll who found that Plaintiff had only mild to moderate functional limitations and no episodes of decompensation from July 14, 2007, through March 26, 2008. [T. 283-300]. Dr. Skoll found that Plaintiff was able to understand and remember simple instructions, sustain sufficient attention to complete simple routines tasks, interact appropriately with others, and adapt to ordinary changes and routine work demands. [T. 299]. Similarly, Dr. Renda Alloway found that Plaintiff was cooperative and able to understand, retain and follow instructions; he was able to maintain attention throughout their session on March 20, 2008. [T. 272, 282]. Put simply, the record does not support Dr. Ratcliffe's opinion that beginning July 1, 2007, Plaintiff suffered marked or extreme functional limitations as the result of mental impairments.

The medical treatment notes, however, reflect that Plaintiff had a difficult

14

time dealing with the death of his son and suffered a lot of grief in the immediate aftermath of his death. [T. 316, 317, 339]. On July 31, 2008, Plaintiff voluntarily checked himself into the hospital at the request of his attorney. [T. 339]. Plaintiff was depressed and experiencing grief over the loss of his son, but he denied any suicidal thoughts. [T. 339, 342]. Plaintiff was alert, oriented, and his memory was not impaired. [T. 341]. His judgment and insight were fair. [T. 341]. Plaintiff was also independently able to attend to his actives of daily living. [T. 341]. Plaintiff was discharged the next day. [T. 342].

Subsequently, Dr. Ratcliffe noted that Plaintiff was doing reasonably well [T. 311, 313]. Consistent with the treatment notes prior to the death of this son, Plaintiff was pleasant, alert, attentive, cooperative, his memory was intact, and he had no suicidal thoughts. [T. 312]. His thought process was logical and concrete and his judgment and insight appeared good. [T. 312]. Plaintiff himself testified that he was doing better. [T. 55-56]. Although in September 2008, Dr. Ratcliffe did note that Plaintiff reported that he was depressed or tired and wanted to sleep all the time, Dr. Ratcliffe attributed these symptoms to the methadone and hydrocodone he was taking at the time, not his mental impairments. [T. 314].

While Plaintiff, checked himself into the hospital again in May of 2009

15

as a result of feeling overwhelmed and depressed when he started moving things out the house from his son's room, he was released two days later in stable condition. [T. 325-26]. Plaintiff was very pleasant and cooperative, and he denied thoughts of suicide. [(T. 326]. In fact, Plaintiff reported that "[h]e thinks he is doing well with the current medications he is prescribed by Dr. Ratcliffe and Dr. Miller, but that was just an isolated incident when the symptoms increase his depression again due to removing things from his son's room." [T. 326]. Although the ALJ noted these two voluntary psychiatric hospitalizations, he found that both were of short duration and related to the loss and memory of Plaintiff's recently deceased son. [T. 23].

As the ALJ explained at length, Dr. Ratcliffe's determinations that Plaintiff suffered marked or extreme functional limitations, has suffered repeated episodes of decompensation of extended duration, and has a history of one or more years of inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement are not supported by his treatment records and are inconsistent with other substantial evidence in the record. Accordingly, the Court concludes that the ALJ did not err by failing to give controlling weight to the testimony of Dr.

16

Ratcliffe.[1]

### C. The ALJ's did not Err in Assessing Plaintiff's Residual Functional Capacity

Residual functional capacity (RFC) is an administrative assessment made by the Commissioner as to what a claimant can still do despite his or her physical or mental limitations. SSR 96-8p, 1996 WL 374184 (Jul. 2, 1996); 20 C.F.R. § 404.1546(c); 404.946(c). In assessing a claimant's RFC, the ALJ will consider all of the claimant's medically determinable impairments, including those that are not severe. 20 C.F.R. § 404.1545(a)(2). The RFC assessment is based on all the relevant medical and other evidence in the record. 20 C.F.R. § 404.1545(a)(3). In determining a claimant's RFC, the ALJ must identify the claimant's functional limitations or restrictions and assess the claimant's work-related abilities on a function-by-function basis. SSR 96-8p. The ALJ's assessment must include a narrative discussion detailing how the evidence in the record supports his or her conclusion. SSR 96-8p.

Plaintiff contends that the ALJ failed to make a "function-by-function assessment of his residual functional capacity." [Doc. 10 at 20]. The ALJ's

---

[1] Although Plaintiff also contends that ALJ demonstrated a personal bias with regard to Plaintiff's mental impairments, which deprived him of a full and fair hearing on his claims, the Court finds that this argument is without merit. The record reflects that the ALJ conducted a full and fair hearing, weighed all the evidence in the record, and made a determination based on the evidence in the record. In contrast to Plaintiff's contention the contrary, the decision of the ALJ was not based on the ALJ's personal bias toward's either Plaintiff's mental impairments or Plaintiff.

opinion, however, reflects that he identified the claimant's functional limitations and restrictions - including Plaintiff's manipulative limitations stemming from his carpal tunnel syndrome - and assessed the claimant's work-related abilities on a function-by-function basis. [T. 24-29]. Moreover, Plaintiff's contention that the ALJ's determination was "conclusory" and lacked the required level of specificity is without merit because the ALJ's opinion contained a sufficient narrative to allow this Court to conduct a meaningful review of the decision. See SSR 96-8p. The ALJ discussed in detail the medical evidence he considered and relied upon in determining Plaintiff's RFC. [T. 24-29]. Upon a review of the record, the Court finds that the ALJ's assessment of Plaintiff's RFC is supported by substantial evidence.

### D. The Additional Evidence Submitted to the Appeals Council does not Require Remand

In determining whether to grant review of the ALJ's decision, the Appeals Council must take into consideration new and material evidence that relates to the period prior to the decision of the ALJ, even if it declines to review the decision. Wilkins v. Sec., Dep't of Health and Human Servs., 953 F.2d 93, 95 (4th Cir. 1991). Accordingly, the Appeals Council must consider additional evidence that was not submitted to the ALJ when the evidence is (1) new, (2) material, and (3) relates to the period on or before the date of the decision of the ALJ. Id. at 95-96. "Evidence is new within the meaning of this

section if it is not duplicative or cumulative." Id. at 96. "Evidence is material if there is a reasonable probability that the new evidence would have changed the outcome." Id. Where, like here, the Appeals Council incorporates the additional evidence into the administrative record, the Court must review this evidence when determining whether substantial evidence supports the Commissioner's findings. Wilkins, 953 F.2d at 96; Daniels v. Astrue, 564 F. Supp. 2d 536, 538 (E.D.N.C. 2008); King v. Barnhart, 415 F. Supp. 2d 607, 612 (E.D.N.C. 2005).

Plaintiff contends that the additional evidence he submitted to the Appeals Council requires that the Court remand this case. This additional evidence includes an impairment questionnaire dated February 8, 2010, prepared by Dr. Ratcliffe[2], a brief statement by Dr. Donald Miller that Plaintiff suffers from pain in his back and feet, and additional medical treatment records. [T. 375-403]. Upon a review of these additional medical records, the Court finds that nothing in these records warrants remanding this case for further consideration above and beyond the reasons previously discussed in this Order.

---

[2] In reviewing the medical records, the Court notes that the name of Dr. Robert Ratcliffe is spelled differently throughout the medical records, including on the psychiatric assessments. For example, his name is spelled Ratcliff at one point [T. 373], Radcliff at another [T. 394], and Ratcliffe elsewhere [T. 310-11, 313-16, 358].

**IT IS THEREFORE ORDERED** that the decision of the Commissioner denying the Plaintiff's claim for disability benefits is **AFFIRMED**, and the Defendant's Motion for Summary Judgment [Doc. 12] is **GRANTED.**

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 10] is **DENIED**.

A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: March 27, 2012

Martin Reidinger
United States District Judge